796 A.2d 938 (2002)
351 N.J. Super. 33
CAVALLARO 556 VALLEY STREET CORPORATION, Petitioner-Appellant,
v.
DIVISION OF ALCOHOLIC BEVERAGE CONTROL, Respondent-Respondent.
Superior Court of New Jersey, Appellate Division.
Submitted April 24, 2002.
Decided May 16, 2002.
*939 Picillo Caruso, West Orange, attorney for appellant (Patrick P. Toscano, Jr., on the brief).
David Samson, Attorney General, attorney for respondent (Lorinda Lasus, Deputy Attorney General, on the brief).
Before Judges A.A. RODRÍGUEZ, LEFELT and LISA.
The opinion of the court was delivered by LEFELT, J.A.D.
Marcello Cavallaro is president of petitioner Cavallaro 556 Valley Street Corporation, which possessed a plenary retail consumption liquor license for the Villa Marcello restaurant, located at 556 Valley Street in the City of Orange. The license had been issued by the City of Orange Municipal Board of Alcoholic Beverage Control and renewed for 1999-2000. But petitioner failed to timely renew the liquor license for 2000-2001, and sought relief under N.J.S.A. 33:1-12.18, which permits the issuance of a new license under certain circumstances. The Director of the Division of Alcoholic Beverage Control (ABC) in a May 22, 2001 order denied petitioner's application. Petitioner appeals, and we affirm, holding that the Director is without legislative authority to consider any new *940 license request, under N.J.S.A. 33:1-12.18, after September 28 of the year in which the license should have been renewed.

I.
Cavallaro failed to timely renew the license because of serious personal hardships. Cavallaro's father, who lives in Italy, had become gravely ill, was injured in an automobile accident and lapsed into a coma. Cavallaro was himself disabled because of a work related injury and had been financially supporting his father. Cavallaro made several trips to Italy to care for his father and was forced to temporarily close Villa Marcello. In February 2001, after Cavallaro's father's health had stabilized, petitioner submitted a license renewal application together with all outstanding fees to the local City of Orange Board of Alcoholic Beverage Control.
Because the local board lacked authority to act on the application, petitioner was referred to the State Director of the Division of ABC. Thereafter, on March 23, 2001, petitioner submitted a verified petition to the ABC Director, seeking relief under N.J.S.A. 33:1-12.18. After the Director denied petitioner's application for a new license under this statute, petitioner appealed to this court.

II.
Liquor license terms run from July 1 of one year to June 30 of the following year. N.J.S.A. 33:1-26. A license automatically expires on June 30. A thirty-day grace period is statutorily provided, however, to allow a licensee to file a renewal application after the new license term commences. N.J.S.A. 33:1-12.13. Thus, a licensee may renew its license by filing a renewal application with the municipal issuing authority no later than July 30 of the year beginning the term for which renewal is sought.
Thereafter, a licensee may submit a late application between July 30 and September 28. N.J.S.A. 33:1-12.18. However, the municipal issuing authority may not act on such a late-filed license renewal application unless the ABC Director grants relief under N.J.S.A. 33:1-12.18. This statute provides, in pertinent part, that a new license may be issued "to a person who files application therefor within 60 days following the expiration of the license renewal period." Ibid. To approve the license, "the director shall determine in writing that the applicant's failure to apply for renewal of his license was due to circumstances beyond his control." Ibid. This 60-day period ends on September 28 of the year beginning the license period for which renewal is sought. The statute in question, N.J.S.A. 33:1-12.18, thus provides a mechanism for some licensees who have failed to request renewal in timely fashion to seek relief from the ABC Director.
In this case, the Director rejected petitioner's application because "the licensee has neither complied with the requirements of N.J.S.A. 33:1-12.18 nor demonstrated `constructive compliance' with those requirements, In re Ronnie Trent Enterprises, ABC Bulletin 2296, No. 2 (1978)." Petitioner contends that the Director abused his discretion by failing to recognize the various personal hardships and circumstances which led to its failure to renew the license in timely fashion.

III.
Because petitioner filed its application well after "60 days following the expiration of the license renewal period," the critical question raised by this appeal is whether the time frame contained in N.J.S.A. 33:1-12.18, is mandatory or directory. If a statutory time frame is mandatory, *941 then modification or relaxation may be granted only by the Legislature. In Kohler v. Cobb, 31 N.J. 369, 376, 157 A.2d 681 (1960), for example, the Supreme Court found mandatory N.J.S.A. 40:46-19, which required an oath to be administered to municipal sewerage authority members and filed with the municipal clerk within thirty days after the members began their terms of office. Because the oath was not timely filed, the Court held that vacancies in the offices existed as a result of the failure to comply with the mandatory oath provisions. Ibid.
If a particular statutory deadline is only directory, however, then the agency would have authority to excuse untimeliness. In Howell Township v. Div. of Tax Appeals, 99 N.J.Super. 11, 14, 238 A.2d 476 (App.Div.1968), for example, a trial judge had concluded that the Division of Tax Appeals lacked jurisdiction to continue with hearings beyond January 10, 1967, because he construed as mandatory statutory language requiring the hearings "to be completed by January 10 next following the promulgation of the table" used to calculate State aid for local school districts. We reversed after concluding that the particular provision was directory and not mandatory. Ibid.
When considering statutorily established deadlines for the public to seek relief from State agencies, we discern two rationales that have been utilized to decide whether a particular time frame is directory or mandatory. The first can be considered a jurisdiction rationale and the second a legislative scheme analysis. We explain both approaches.
The jurisdiction rationale, reflects the well known principle that administrative agencies derive all their powers from the Legislature. E.g., Silverman v. Berkson, 141 N.J. 412, 416-17, 661 A.2d 1266, cert. denied, 516 U.S. 975, 116 S.Ct. 476, 133 L. Ed.2d 405 (1995). Thus, when the Legislature establishes a certain time frame for a person to seek relief from an agency, the time frame is considered jurisdictional, cannot be waived or relaxed by the agency and must be strictly adhered to. Should it be perceived as unjust or unrealistic, relief must be sought before the Legislature.
There are several cases following the jurisdiction rationale. For example, in Scrudato v. Mascot Sav. and Loan Ass'n. of Newark, 50 N.J.Super. 264, 269, 141 A.2d 797 (App.Div.1958), we considered an application for an order to be issued by the Commissioner of Banking and Insurance. In that case, we stated that "an administrative agency's power to hear any matter must be derived from the Legislature, and where it has fixed a definite time within which parties may seek administrative relief, neither the administrator nor this court is in position to enlarge that time." Id. at 270, 141 A.2d 797. "Even a minor deviation from the statutory limit in a particular case is fatal." Id. at 271, 141 A.2d 797. In Hess Oil & Chem. Corp. v. Doremus Sport Club, 80 N.J.Super. 393, 395-96, 193 A.2d 868 (App.Div.1963), certif. denied, 41 N.J. 308, 196 A.2d 530 (1964), as another example, we concluded that an objector to a place-to-place transfer of a liquor license must appeal to the ABC Director within thirty-days after the grant of a transfer. We stated that any "[e]nlargement of [the] statutory time for appeal to a state administrative agency lies solely within the power of the Legislature." Id. at 396, 193 A.2d 868.
The following cases also applied the jurisdiction rationale: Borough of Park Ridge v. Salimone, 21 N.J. 28, 46-47, 120 A.2d 721 (1956) (appeal to Civil Service Commission by removed employee must be within ten days of removal); Schaible Oil Co. v. N.J. DEP, 246 N.J.Super. 29, 31-32, *942 586 A.2d 853 (App.Div.), certif. denied, 126 N.J. 387, 599 A.2d 163 (1991) (person must request administrative hearing within twenty-days to seek relief from penalties imposed for violations of the Water Pollution Control Act); Dept. of Cmty. Affairs v. Wertheimer, 177 N.J.Super. 595, 599-600, 427 A.2d 592 (App.Div.1980) (aggrieved person must request an administrative hearing under the Hotel and Multiple Dwelling Law within 15 days); In re Application of Modern Indus. Waste Serv. Inc., 153 N.J.Super. 232, 237-38, 379 A.2d 476 (App.Div.1977) (person aggrieved by actions of Bureau of solid Waste Management must request hearing within fifteen-days); Midland Glass Co. v. N.J. DEP., 136 N.J.Super. 194, 197-98, 345 A.2d 353 (App.Div.1975), certif. dismissed, 70 N.J. 152, 358 A.2d 199 (1976) (person must request hearing before the Department of Environmental Protection with fifteen-days); Lowden v. Bd. of Review, 78 N.J.Super. 467, 469-71, 189 A.2d 224 (App. Div.1963) (unemployment compensation claimant must appeal to Appeal Tribunal within mandatory time frame).
The second rationale to discern whether an administrative agency's statutorily established deadline is directory or mandatory requires an analysis of the statutory scheme involved. This rationale was adopted in White v. Violent Crimes Compensation Bd., 76 N.J. 368, 388, 388 A.2d 206 (1978), where the Supreme Court dealt with a statutory provision establishing a time frame for crime victims to apply for benefits from the Violent Crimes Compensation Board. While considering a rape victim's late filing, the Court tolled the time frame "for the period of the victim-applicant's crime-induced incapacity in circumstances where the late-filing of the application for compensation does not prejudice the ability of the Board to verify the victim's eligibility." Id. at 386, 388 A.2d 206.
The particular language provided in pertinent part that "[n]o order for the payment of compensation shall be made ... unless the application has been made within two years after the date of the personal injury or death." N.J.S.A. 52:4B-18. The Court analyzed this language under the law pertaining to statutes of limitations, and concluded that the deadline could be tolled. White, supra, 76 N.J. at 374-79, 388 A.2d 206. The court explained that "in the case of a statutorily created right, a `substantive' limitation period may appropriately be tolled in a particular set of circumstances if the legislative purpose underlying the statutory scheme will thereby be effectuated." Id. at 379, 388 A.2d 206. See also Rivera v. Bd. of Review, 127 N.J. 578, 585, 606 A.2d 1087 (1992) (where the Court criticized Lowden v. Board of Review, supra, 78 N.J.Super. 467, 189 A.2d 224, a case applying the jurisdiction rationale, and referenced White, supra, 76 N.J. at 376, 388 A.2d 206 and Constitutional due process to permit a late appeal by a migrant worker who did not receive notice of the agency's initial rejection of unemployment benefits); and Horrobin v. Dir., Div. of Tax, 172 N.J.Super. 173, 178, 1 N.J.Tax 213, 411 A.2d 479 (1979) (where the Tax Court relied on White, supra, 76 N.J. at 387, 388 A.2d 206 in determining that whether the homestead rebate filing deadline statute of limitation may be tolled is a question of legislative intent).
Unlike the notice problem that troubled the Court in Rivera, supra, 127 N.J. 578, 606 A.2d 1087, there are no constitutional implications present in the issue we confront. It is well accepted that ownership of a liquor license is a privilege and not a property right, Mazza v. Cavicchia, 15 N.J. 498, 105 A.2d 545 (1954); they are only "annual licenses which may be renewed annually." Lubliner v. Board of *943 ABC, 33 N.J. 428, 442, 165 A.2d 163 (1960). See also Barba v. Div. of Alcoholic Beverage Control, 96 N.J.A.R.2d (ABC) 39, 40 ("a license to sell or serve alcoholic beverages is a privilege, not a right"). Petitioner does not complain that he was unaware of the ABC license renewal requirements. In addition, no licensee has a vested right to renewal of any liquor license. Zicherman v. Driscoll, 133 N.J.L. 586, 588, 45 A.2d 620 (Sup.Ct.1946).
Nevertheless, the provision in question does authorize the Director to grant a new license when an application is filed during a particular period (within 60 days following expiration of the license renewal period) if the Director also determines that the applicant failed to apply for renewal for reasons beyond the licensee's control. Thus, the applicant is authorized by the Legislature to apply for relief from the ABC Division and we believe that both the jurisdiction and statutory scheme rationales explained above could be applied to determine whether the 60-day time frame is directory or mandatory.
In Schaible, Judge Michels, besides concluding that the time limitation in that case was "mandatory and jurisdictional" also concluded that White was inapplicable because "the legislative purpose underlying the statutory scheme would not be effectuated by permitting Schaible to file an untimely request for a hearing." Schaible, supra, 246 N.J.Super. at 31,33, 586 A.2d 853. In White, the Court cited Scrudato v. Mascot Sav. & Loan Ass'n. and Borough of Park Ridge v. Salimone, two jurisdiction cases, and perceived "no fundamental inconsistency between the holdings of those cases and the approach [the Court] utilized herein." White, supra, 76 N.J. at 386-87, 388 A.2d 206. Indeed the Court also noted that an "[a]nalysis of the particular statutory schemes there involved under the principles we today adopt commends the results reached." Id. at 387, 388 A.2d 206.
Even under the jurisdiction rationale, legislative intent would trump any characterization of the type of deadline established. Under the jurisdiction cases, for example, if a particular statute established a deadline for the public to seek administrative relief, the time frame would be labeled mandatory. If we look past the type of time frame established, however, and consider legislative intent, whatever the Legislature intended controls the analysis. Stated another way, if it is unclear that the Legislature intended to permit relaxation of any particular time frame, then however the statute is described should not matter. What the Legislature intended controls. We, therefore, proceed to scrutinize the legislation at issue.

IV.
Considering the language at issue in N.J.S.A. 33:1-12.18, we first note that this provision does not permit renewal of the license. That is so because under the statutory scheme the license technically has already expired. Thus, when an application is made between July 30th and September 28th, the provision permits a new license to be issued, but the legislation does not permit renewal to occur after July 30th of the new license year.
This scheme thus provides for a renewal period up to July 30th and an additional fail safe period from July 30th to September 28th to pick up those hardship cases that could not have been filed during the regular renewal period. The scheme establishes an "orderly process of timely renewal of licenses." Barba v. Div. of Alcoholic Beverage Control, 96 N.J.A.R.2d (ABC) 39, 40. The legislation also fosters the strict regulatory control of liquor licenses that are not only renewed annually but are also regulated in number.
*944 E.g., N.J.S.A. 33:1-12.14; Liptak v. Div. of Alcoholic Beverage Control, 44 N.J.Super. 140, 129 A.2d 890 (App.Div.), certif. denied, 24 N.J. 222, 131 A.2d 586 (1957). Should renewal be permitted after September 28th of the new license year, the regulators' ability to control the numbers of licenses may be made significantly more difficult. At some point, the local issuing authority must be free to consider a particular license lapsed.
Also, should new license applications be permitted after September 28th, the time frames included within the legislative licensing and renewal scheme would become much less meaningful. There is no indication that the Legislature intended the Director to administer the carefully structured renewal scheme with any greater flexibility than that provided within the legislation. In fact, the evidence is to the contrary. The public policy of this State is to strictly regulate alcoholic beverages. N.J.S.A. 33:1-3.1(b)(1). The Legislature tasks the Commissioner, now Director, to be fair and impartial but also to stringently administer the ABC laws. N.J.S.A. 33:1-23.
Furthermore, it is important to note that the particular provision in issue does not establish a deadline for the agency to perform some activity. Thus, this is not a situation where an agency might be rendered impotent to perform its duties should we find a missed deadline to be mandatory. Howell Township v. Div. of Tax Appeals, supra, 99 N.J.Super. at 17, 238 A.2d 476. Rather, the deadline at issue is one established for the regulated public in a field that is vigorously regulated. Our analysis of the legislative scheme leads us to conclude that the provision at issue permits a late license renewal applicant one last opportunity to obtain ABC relief regarding the expired license.
Once the extended sixty-day period expires on September 28, and assuming there are no Constitutional implications present, the director has no legislative authority to consider either a renewal license under N.J.S.A. 33:1-25 and N.J.S.A. 33:1-12.13 or a new license under N.J.S.A. 33:1-12.18. No matter what excuses for failing to renew in timely fashion are asserted, the Director lacks authority after September 28th.
We note that the Director indicated that petitioner did not substantially comply with the statute. In re Ronnie Trent Enterprises, ABC Bulletin 2296, No. 2 (1978). We need not decide in this case whether the Director has authority to determine that a licensee has substantially complied with N.J.S.A. 33:1-12.18. We recognize that in In re Ronnie Trent, there was "reasonable notice of petitioner's claim since the corporate application was filed (though not properly) within the 60-day limit of N.J.S.A. 33:1-12.18 and was forwarded... to the Division." Here, petitioner provided no notice within the 60-day limit of any intention to renew. Consequently, there is no basis to consider substantial compliance, even assuming that there is legislative authority for such a decision.
Finally, we recognize that N.J.S.A. 33:1-12.18 has been construed for many years by the agency as establishing a mandatory time limit. E.g., In re Granada Restaurant Corp., 97 N.J.A.R.2d (ABC) 13, 14 (citing three unreported Appellate Division decisions from 1973 through 1989 concluding that the Director lacks jurisdiction to entertain applications for relief, under N.J.S.A. 33:1-12.18, after September 28th). Should we permit relaxation at this time, the many licensees who had been properly advised that they were barred from renewing their licenses might at this late date attempt to assert various reasons justifying *945 their failure to timely renew. White, supra, 76 N.J. at 391, 388 A.2d 206 (Conford dissent); see also In the Application of Georgia's Liquors and Deli, 96 N.J.A.R.2d (ABC) 69, 71 (petitioner attempted to renew a license for 1993-94, despite failing to renew the license in 1994-95 and 1995-96). Such untimely applications should neither be encouraged nor allowed.
Affirmed.